THE ST. VRAIN STONE COMPANY, APPELLANT, v. THE DENVER, UTAH & PACIFIC RAIROAD COMPANY, APPELLE.

1. EVIDENCE.

The rule that a written contract cannot be varied or contradicted by a contemporaneous oral agreement is elementary.

2. SAME.

When the written contract shows an agreement to do a certain thing upon condition, parol evidence is not admissible to establish an absolute agreement to do it.

3. SAME.

After a written contract has been executed, oral negotiations leading up to it cannot be shown for the purpose of changing or contradicting its terms.

4. PRACTICE ON APPEAL.

When the judgment is supported by competent evidence, it will not be disturbed.

*Appeal from the District Court of Arapahoe County.*

THE appellee, The Denver, Utah & Pacific Railroad Company, commenced this action in the district court, upon a written contract, the terms of which are in substance as follows:—

1st. The St. Vrain Stone Company agrees to sell and convey to Stout, Gallagher & Lay, eighty acres of land and some personal property in Boulder county, Colorado.

2d. Stout, Gallagher & Lay agree to pay therefor $3,000 in cash, and give four promissory notes; two for the sum of $750 each, payable in six months, and two for the sum of $750 each, payable in one year, with interest at eight per cent per annum; notes to be secured by deed of trust.

3d. Upon the completion of the above requirements The St. Vrain Stone Company was to indorse to The Denver, Utah & Pacific Railroad Company, without recourse, one of said notes for $750, payable in six months, and one for a like sum payable in one year, and also pay said railroad company in cash the sum of $1,000.

4th. In consideration of these notes and the cash payment mentioned, The Denver, Utah & Pacific Railroad Company agrees to . " commence as soon as may be, and with all convenient speed construct a branch of its railroad from Stone Canon switch to the above described eighty acres of land, and to locate the same, if practicable, through what is known as Crooked Canon, and said Crooked Canon shall be located as the route of said railroad, if upon the survey it be found practicable to there locate and construct a line which can be afterwards conveniently operated, and provided further that the said line through Crooked Canon can be constructed at an expense of not more than $1,000, in excess of the expense of constructing the same without the Canon."

It is admitted that Stout, Gallagher & Lay, parties of the second part, complied with the obligation imposed upon them by the agreement, by depositing in the First National Bank of Denver, $3,000, in cash, to the credit of The St. Vrain Stone Company, the first party to the agreement; also, their four promissory notes and deed of trust, as provided by the terms of the contract.

The third party to the agreement, The Denver, Utah & Pacific Railroad Company, alleges that it constructed a branch of its railroad as it had agreed to do, and demanded of The St. Vrain Stone Company the $1,000, in cash, and two notes of $750 each, and upon refusal brought this action to recover

from The St. Vrain Stone Company damages for its failure to comply with the terms of its contract.

The answer of the defendant, The St. Vrain Stone Company, admits making the agreement and failure on its part to comply therewith, and admits that said Stout, Gallagher & Lay have deposited $3,000 in cash, and the four promissory notes in the bank, as they had agreed to do. It alleges, however, that Stout, Gallagher & Lay, and The Denver, Utah & Pacific Railroad Company, conspired together to defraud it by inducing it to sell its property at much less than its true value.

Second. That the D. U. & P. R. R. Co. agreed with The St. Vrain Stone Company that if the Stone company would sell the eighty acres of land to Stout, Gallagher & Lay, for $6,000, and would contribute and pay plaintiff $2,500, partly in cash, and partly in notes, that plaintiff would build a railroad from Stone Canon switch to defendant's lands, and transport over said road when completed, stone from defendant's quarries.

Third. That to induce The St. Vrain Stone Co., to execute the said agreement, the railroad company verbally assured defendant that the route through Crooked Canon was a practicable route, except that by reason of the abruptness of the curves and the difficulty of the grade therein, it might be impracticable to operate the same conveniently, but that with an additional expense, not exceeding $500, the roadbed could be made entirely practicable through the canon, and that if, upon full examination, it should be found impracticable to construct the roadbed through said Crooked Canon, which could afterwards be conveniently operated, that the plaintiff would afterwards, at its own cost and expense, construct switches connected with its railroad leading to and into the said Crooked Canon and into the lands of defendant aforesaid, at both ends of the said canon, and would thereby afford the defendant all the service it might require for the transportation of stone.

Fourth. That plaintiff, and Stout, Gallagher & Lay, made

an agreement to the effect that by means of such fraudulent representations and pretenses plaintiff should procure defendant to convey to Stout, Gallagher & Lay said eighty acres of land, which were to be operated as a stone quarry with exclusive privileges to said Stout, Gallagher & Lay for transporting their stone, and would, to prevent defendants from being a competitor, refuse to construct said railroad in the agreement in the complaint mentioned, or any switches.

Fifth. That after the written agreement was executed, plaintiff made a further survey and notified defendant that it was practicable to construct said railroad through said Crooked Canon, and thereby caused defendant to have executed deeds from the several proprietors of lands, for a fifty foot right of way, and did likewise deposit in said bank, its own deed for right of way.

Sixth. That Stout, Gallagher & Lay, on June 7, 1887, took possession of the land mentioned in the complaint, and of the personal property thereon, and began to work and quarry the same, and have ever since continued to do so.

Seventh. That the railroad might practically have been constructed and conveniently operated through Stone Canon.

The demurrers of Stout, Gallagher & Lay and of The Nebraska and Colorado Stone Company to this pleading were sustained, and as to them the cross-complaint was dismissed.

The answer of the Denver, Utah & Pacific Railroad Company to the cross-complaint admits that it did not locate said railroad through Crooked Canon, because upon a survey it was not practicable to locate or construct it therein, and because it could not have been conveniently operated if it had been so constructed, and further because it would have cost more than $1,000 in excess of the expense of constructing it without said canon. Denies all other allegations of the cross-complaint.

A trial to the court without a jury resulted in findings for the plaintiff, and a judgment in its favor for the amount of plaintiff's demand. The defendant brings the case here by appeal.

Messrs. WELLS, MCNEAL & TAYLOR, for appellant.

Messrs. WOLCOTT & VAILE, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

A question is raised with reference to the form of defendant's pleadings, but as the determination of such question can in no way affect the result, the merits of the controversy will be considered without any reference to it.

Counsel for defendant offered evidence at the trial, tending to show that it was orally agreed that the road should be constructed through Crooked Canon, at the time the written contract was executed. In other words, the claim is that a written agreement to locate the line within the canon upon certain express conditions can by parol be changed to an absolute agreement to do so. The rule that a written contract cannot be varied or contradicted by evidence of a contemporaneous oral agreement is elementary. This rule precludes the admission of the evidence proposed. The written contract provides that said road shall be located through Crooked Canon, " if upon survey it be found practicable to there locate and construct a line which can be afterwards conveniently operated, and provided further that the said line through Crooked Canon can be constructed at an expense of not more than $1,000 in excess of the expense of constructing the same without the said canon." This agreement, providing as it does for a survey as a basis for the location of the line, and for the construction of the line without the canon, if certain conditions are found to exist, will not admit of such proof. By the oral evidence proposed, it is attempted to show that the canon location was certainly and definitely agreed upon, to the exclusion of the route outside of the canon. This is in direct contradiction of the terms of the written agreement. If such proof is admissible under the claim of fraud, then any oral agreement would be admissible to vary and contradict the terms of a written contract. This

cannot be permitted. The rule .contended for, would, if adopted, introduce an element of uncertainty into written contracts that could only be productive of strife between the parties. After a written contract has been executed, oral negotiations leading up to such a contract cannot be shown for the purpose of changing or contradicting its terms.

As this is the only proof of fraud to be found in the evidence, and the consideration for the written contract sufficiently appearing, but one question is left for review. It was contended by defendant that no practicable route for the road could be found within the canon. This was disputed by the testimony of witnesses introduced by the plaintiff. The record displays a large amount of conflicting evidence upon this question of practicability, and complaint is now made because the trial court failed to determine upon which side lay the preponderance. The determination of this question is entirely unimportant, the court having found from the evidence that to build any line that could be operated within the canon would necessitate the expenditure of more than $1,000 over and above the cost of the constructed line outside the canon.

It being shown that the latter route is practicable, and the written contract providing as it does that a line was only to be constructed within the canon in case the expense to be incurred thereby should not be more than $1,000, in addition to the expense of constructing the line outside of the canon, the plaintiff was released from constructing the line within the canon by the express finding of the court upon the question of cost, this being one of the conditions of the written contract upon which the plaintiff had a right to rely.

The defendant without doubt failed to realize the benefits which were expected to result from the construction of the railroad. The courts cannot, however, afford relief, as this would necessitate the making of a new contract for the parties in place of the one they deliberately entered into.

Although there is serious conflict in the evidence as to the amount of the additional expense required to build a railroad

in the canon, we cannot set aside the finding of the trial court, that it would exceed one thousand dollars, supported as the finding is, by competent evidence. The judgment is accordingly affirmed.

*Affirmed.*