No. 22130.

FRANKLIN L. BURNS *v.* EVELYN D. BURNS.
(454 P.2d 814)

Decided April 28, 1969.     Rehearing denied June 9, 1969.

HIESTER, TANNER and CLANAHAN, BARKLEY L. CLANA-HAN, BILL EARL TOM, for plaintiff in error.

CARL H. NOEL, for defendant in error.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

THIS controversy was earlier before this court in *Burns v. Burns*, 155 Colo. 96, 392 P.2d 662, here referred to as the "former *Burns.*"

The plaintiff in error here, referred to as Mr. Burns, was the plaintiff in a divorce action. The defendant in error was defendant and is here called Mrs. Burns.

There were incorporated in the divorce decree the provisions of an agreement between the parties made shortly prior to the entry of the interlocutory decree on July 8, 1958. Under these provisions Mr. Burns was to, and did, transfer substantial amounts of property to Mrs. Burns and was to pay her $20,000 annually for several years, one of such payments to be made on June 25, 1959. A further provision was as follows:

"If requested to do so by Plaintiff, [Mr. Burns], Defendant [Mrs. Burns] shall sign for filing a joint Federal income tax return for the calendar years 1957 and 1958. All income taxes due on said 1957 and 1958 returns shall be paid by the Plaintiff, provided that should any tax liability result from the property settlement agreement entered into by the parties, each party shall pay his or her tax resulting therefrom."

At the request of Mr. Burns, Mrs. Burns joined him in signing a joint federal income tax return for 1958 which Mr. Burns had had prepared. If they had filed separate returns for 1958, according to Mr. Burns the tax under Mrs. Burns' return would have been $20,607.15. This would have resulted both from property transferred to her under the property settlement agreement and from income payable to her. Mr. Burns further testified that, if separate returns had been filed, the tax under his return would have been less than that payable under the joint return. It appears that under a joint return the transfers to Mrs. Burns were not taxable, but would have been under a separate return by her. Mr. Burns stated that the joint return did not reflect any gain or loss to Mrs. Burns as a result of the agreement. It was and is the position of Mr. Burns that, if separate returns

had been filed, Mrs. Burns should pay upon the tax accruing under a joint return the amount she would have paid under a separate return by reason of such transfers.

There was no testimony as to the amount of tax under the joint return which resulted from taxable income allocable to Mrs. Burns. Mr. Burns does not take the position that Mrs. Burns was liable for the portion of tax under the joint return resulting from her income; but rather, it is Mr. Burns' position, as stated in his brief, that under the agreement she should pay, "the amount of the joint tax which represented the taxable distribution to her if separate returns were filed."

Mrs. Burns was represented by the late David Rosner in the divorce proceedings. During the summer of 1959 Mr. Rosner entered his last illness and discontinued law practice. In late summer Mrs. Burns engaged Colonel Philip S. Van Cise as her attorney. Shortly thereafter Mr. Burns communicated to Colonel Van Cise a request that Mrs. Burns join him in the execution of a joint federal income tax return for the year 1958, which Mr. Burns had had prepared and which he delivered to Colonel Van Cise. The latter procured Mrs. Burns' signature on the return.

On September 10, 1959 there was a meeting in Colonel Van Cise's office attended by him, Mr. and Mrs. Burns and Mr. Burns' attorney, the late C. Blake Hiester. At that time Mr. Burns produced two checks, one payable to Mrs. Burns in the amount of $20,000 and the other payable to the District Director of Internal Revenue in the amount of $309.67. The $20,000 check bore a typed endorsement to the District Director of Internal Revenue. Mrs. Burns signed her name below this endorsement and the return and the two checks were left in the possession of Colonel Van Cise, who made delivery of them to the office of the District Director.

In June 1962 Mrs. Burns filed a motion for judgment

with respect to the $20,000 payment payable on June 25, 1959. Mr. Burns contended that this had been paid with the $20,000 check of September 10, 1959. At the close of the evidence presented by Mrs. Burns at the hearing upon her motion, the trial court ruled in favor of Mr. Burns. Mrs. Burns brought the matter here with the resulting former *Burns* opinion. In former *Burns* Mr. Justice Moore wrote as follows:

"At the close of the evidence offered in support of the Motion for Judgment, counsel for Franklin moved for judgment, reserving the right to put on evidence on his own behalf in the event the motion should be denied. It was his position that the endorsement of Evelyn constituted a payment, and the check, Exhibit 'B,' having been cashed following her endorsement prevented her from asserting that she had not received the proceeds derived therefrom.

"The trial court erroneously agreed with this argument of counsel and entered judgment in favor of Franklin.

"Under the state of the record at the time Franklin's motion was granted, it was undisputed that Evelyn did not receive any of the money represented by the check in question and that the entire amount thereof was received by the Collector of Revenue in payment for income taxes which only Franklin was obligated to pay. Under the record before us Franklin seeks to pay two separate obligations with but one actual payment. He definitely discharged his individual obligation for income taxes by securing the conditional endorsement of Evelyn to a $20,000.00 check, when she believed another check was to be delivered to her in a like sum which she could deposit to her own account. The second check was not delivered.

"It may be that if the trial court had denied the motion for judgment made by counsel for Franklin (as the court should have done) a defense to Evelyn's claim might have been shown by evidence adduced by him.

"Counsel for Franklin reserved the right to call witnesses, and he must be afforded an opportunity to do so.

＊　＊　＊

"The judgment of the trial court relating to the claim for $20,000.00 is reversed and a new trial thereon is ordered."

On the retrial Mrs. Burns again introduced evidence similar to that which was the basis for the statements of Mr. Justice Moore in the third paragraph above quoted, except there was no oral testimony — as there had been in the first hearing — that Mrs. Burns expected to receive another $20,000 check at the September 10, 1959 meeting. However, there was introduced in evidence a letter of Colonel Van Cise to Mrs. Burns dated September 9, 1959. This was received in evidence over the objection of Mr. Burns but the matter was not mentioned in his motion for new trial or assigned as error here. Eliminating the letterhead and date this exhibit reads as follows:

"Mrs. Evelyn Burns

"Dear Mrs. Burns:

"Please sign the Joint U.S. Income Tax Return for 1958. I will keep it in my possession until I receive:

"1. Check from Franklin L. Burns to U.S. for $20,309.67, plus any additional interest as set forth in line 19 of the return.

"2. Check from Burns to you for $20,000.00 as of June 25, 1959.

"When I receive these checks, I will give the first check to the United States, and the second check to you.

"The U.S. will then get the Tax Return.

　　　　　　　　　"Yours truly,
　　　　　　　　　LESHER, SCHMIDT & VAN CISE
　　　　　　　　　S/Philip S. Van Cise
　　　　　　　　　Philip S. Van Cise

PVC:em"

The presentation of Mr. Burns might be summarized as follows:

A. If Mr. and Mrs. Burns had filed separate federal

income tax returns for 1958, the tax under her return was estimated to be approximately $20,600.

B. There was an offer of proof, which was rejected, to the effect that in the negotiations prior to the execution of the agreement Mr. Rosner thought the meaning of the wording was as now contended by Mr. Burns.

C. In early summer of 1959 Mr. Burns' counsel approached Mr. Rosner as to the execution of a joint income tax return and payment of tax thereunder by Mrs. Burns. Mr. Anthony F. Zarlengo, who also represented Mr. Burns, testified that Mr. Rosner said, "If Mr. Burns wants a joint return, I don't want her to pay a greater tax than she would had a separate return been filed." Mr. Hiester testified that he delivered the joint return to Mr. Rosner and a check payable to Mrs. Burns in the amount of $20,000; that Mr. Rosner "stated that he would procure his client's signature on a joint return, and her payment of her share of the tax on such return;" and that Mr. Rosner agreed not to deliver the $20,000 check to Mrs. Burns until "Mrs. Burns gets her income tax payment in for 1958." After Mr. Rosner discontinued his law practice that summer counsel for Mr. Burns obtained the return of the check, and presumably the joint return, from a person in Mr. Rosner's office.

D. Colonel Van Cise agreed with counsel for Mr. Burns that Mrs. Burns would apply the $20,000 payment to be made to her to the payment of income tax under the joint return.

The trial court found in favor of Mrs. Burns and entered judgment for $20,000 plus interest.

Counsel for Mr. Burns argues that the September 10, 1959 check in the amount of $20,000 payable to Mrs. Burns and endorsed by her to the District Director of Internal Revenue constituted payment of the obligation to her. That matter was determined adversely to Mr. Burns by the former *Burns* and we do not again address ourselves to it.

The effect of the former *Burns* was that Mr.

Burns, in order to prevail, would have to come forth with something additional to show a responsibility on the part of Mrs. Burns to pay tax under the 1958 joint income tax return. The proffered evidence of Mr. Rosner's interpretation of language during negotiations and prior to the execution of the agreement was clearly inadmissable. *Stone Co. v. Denver, etc., R.R. Co.,* 18 Colo. 211, 32 P. 827. The provisions of the agreement and decree under consideration are perfectly plain and unambiguous and cannot be changed by parol evidence. *Light v. Rogers,* 125 Colo. 209, 242 P.2d 234; *Oriental Refining Co. v. Hallenbeck,* 125 Colo. 77, 240 P.2d 913. The mere fact that there is a difference between the parties as to the interpretation of an instrument does not of itself create an ambiguity. *Brunton v. International Trust Co.,* 114 Colo. 298, 164 P.2d 472. The statement by Mr. Rosner that he would procure Mrs. Burns' payment of her share of the tax on the joint return did not bind her, there being no evidence that he was authorized to obligate her to make this payment. *Houghton v. Ellis,* 19 Colo. App. 125, 73 P. 752; 7 Am. Jur. 2d 125; 7 C.J.S. 924. Mr. Rosner well might have concluded that it would be equitable for Mrs. Burns to pay the portion of the tax Mr. Burns desired her to pay, and that he would advise her to do so; but he could not by himself — and courts cannot — make a new contract to supersede the plain language of an existing one. *Yamin v. Levine,* 120 Colo. 35, 206 P.2d 596.

██ Colonel Van Cise did not testify. The testimony of Mrs. Burns is in conflict with the evidence submitted by Mr. Burns as to the attitude and statements of Colonel Van Cise. The above quoted letter supports Mrs. Burns' position as to the understanding of Colonel Van Cise. It is implicit in the trial court's judgment in favor of Mrs. Burns that he found that neither Colonel Van Cise nor Mrs. Burns changed the terms of the agreement and decree, and this has support in the evidence.

The long and short of it is that the trial court determined without error that Mr. Burns did not sufficiently

fulfill the burden of going forward imposed upon him by the former *Burns*.

If this had been an action of Mr. Burns to recover any tax under the joint return resulting from the property settlement agreement allocable to Mrs. Burns, a different picture would be presented. As stated above this was not Mr. Burns' theory and there was no testimony as to what the amount of this tax might be, if any.

Judgment affirmed.

MR. CHIEF JUSTICE McWILLIAMS, MR. JUSTICE PRINGLE and MR. JUSTICE HODGES dissent.